## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SARA BLOCH, MARY CEASE, and
the HOUSING AUTHORITY OF
INDIANA COUNTY,

        Plaintiffs,

    v.

U.S. DEPARTMENT OF HOUSING
AND URBAN DEVELOPMENT and
MARCIA FUDGE, in her official
capacity as SECRETARY, U.S.
DEPARTMENT OF HOUSING AND
URBAN DEVELOPMENT,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

2:23-CV-1660-NR

### MEMORANDUM ORDER

Plaintiffs Sara Bloch and Mary Cease sought Section 8 housing benefits, but were denied those by the local housing authority because they use medical marijuana. Plaintiffs claimed that their use of medical marijuana was legal under Pennsylvania law, and the issue was litigated in state court, eventually to the Commonwealth Court. That court effectively ordered the Housing Authority of Indiana County to provide Plaintiffs with Section 8 benefits. But the Authority says it can't do that, as it claims that the Department of Housing and Urban Development would then pull its funding, since marijuana remains illegal under federal law. Further complicating matters, as has been widely reported, the federal government is in the process of re-scheduling marijuana under the Controlled Substances Act.[1] If that happens, then this entire dispute probably goes away.

---

[1] Press Release, Off. of Pub. Aff., U.S. Dep't of Justice, Justice Department Submits Proposed Regulation to Reschedule Marijuana (May 16, 2024),

Against this backdrop, Ms. Bloch, Ms. Cease, and the Authority have joined forces and filed the present lawsuit against HUD, essentially seeking a declaration that federal law does not require denial of Section 8 housing benefits based on use of medical marijuana, and that such a policy violates equal-protection rights.

After careful consideration, the Court will grant HUD's motion to dismiss. The equal-protection claim, while novel, is not legally viable, and so will be dismissed with prejudice. As for the challenges to HUD's statutory authority, those claims are premature. There must be a more definite agency action before the Court can step in; this is especially the case where, as here, HUD hasn't issued any formal notice that it will pull funding, HUD has discretion to bring an enforcement action, and the federal government's overall position on marijuana is in flux (making it seem less likely that HUD would pursue an enforcement action until the possible re-scheduling of marijuana has been settled). In the current environment, Plaintiffs need something more definite before the Court can act, and so the Court will dismiss the rest of Plaintiffs' claims without prejudice, until such time as the parties' dispute becomes more concrete.

## BACKGROUND

Plaintiffs Sara Bloch and Mary Cease are low-income individuals with disabilities. ECF 29, ¶¶ 23-24. Based on their low incomes, they both qualified and applied for admission to the Section 8 housing program administered by Plaintiff Housing Authority of Indiana County. *Id.* ¶¶ 23-24, 80-82, 95-96. Despite their eligibility, the Authority denied their applications for one reason: both admitted that they "lawfully" use medical marijuana under the Pennsylvania Medical Marijuana Act (35 P.S. § 10231.101 *et seq.*) to treat their disabilities. *Id.* ¶¶ 83-84, 97. In explaining its decisions, the Authority stated that it "must deny program

---

https://www.justice.gov/opa/pr/justice-department-submits-proposed-regulation-reschedule-marijuana.

participation as marijuana is still considered to be an illegal substance by the Federal Government[,]" and that rules, regulations, and guidelines promulgated by the U.S. Department of Housing and Urban Development provide that "a new applicant is prohibited admission into the Section 8 program if the applicant is currently a user of a Schedule 1 controlled substance under federal law[,]" such as marijuana. *Id.* ¶¶ 83, 97.

Ms. Cease appealed her denial, first to the Authority and then to the Court of Common Pleas for Indiana County, and she was unsuccessful both times. *Id.* ¶ 85. She appealed again, this time to the Commonwealth Court of Pennsylvania, and that court saw things differently. *Id.* ¶ 86; *Cease v. Hous. Auth. of Indiana Cnty.*, 247 A.3d 57, 61 (Pa. Commw. Ct. 2021).

The Commonwealth Court in *Cease* found that the Authority had disregarded Section 13661 of the Quality Housing and Work Responsibility Act (42 U.S.C. § 13661 (QHWRA)), which governs admission of new applicants into Section 8 housing. *Cease*, 247 A.3d at 65.  That statute states, "a public housing agency . . . shall establish standards that prohibit admission to the program or admission to federally assisted housing for any household with a member who the public housing agency or owner determines is illegally using a controlled substance[.]"  42 U.S.C. § 13661(b)(1)(A); ECF 29, ¶ 87-88.

The Commonwealth Court concluded that the Authority didn't apply any standards when it rubber-stamped Ms. Cease's rejection based solely on the fact that her use of marijuana is illegal under federal law. *Cease*, 247 A.3d at 63.  The court found that the Authority had improperly ignored that Ms. Cease was authorized under Pennsylvania law to obtain and use medical marijuana, and as such the Authority "[could not] require state-level adherence to the federal prohibition" of marijuana.  *Id.* (cleaned up).  So the court remanded the matter to the Court of

Common Pleas "with directions to remand to the Authority to do what QHWRA mandates and establish fair and reasonable standards for determining in what circumstances admission to Section 8 housing is prohibited for an applicant who is legally using medical marijuana under state law, and to apply those standards with respect to Cease's individual circumstances when determining Cease's eligibility for the Section 8 program." *Id.* at 65.

The Authority, in turn, "conferred with HUD for guidance as to how [the Authority] should comply" with the *Cease* decision given HUD's rules and regulations. ECF 29, ¶ 92. HUD advised that it "would cut off all federal funding" to the Authority if it complied with the *Cease* decision. *Id.* Stuck between a rock and a hard place, the Authority has since declined to comply with the directive from the Commonwealth Court in *Cease. Id.* ¶ 93.

Ms. Bloch, Ms. Cease, and the Authority now bring essentially two causes of action against HUD, seeking declaratory and injunctive relief. In the first (Count II), Plaintiffs allege that HUD's policy requiring denial of admission for applicants who use medical marijuana in accordance with state law violates the equal protection guarantees of the Fifth Amendment Due Process clause because it discriminates against low-income and disabled individuals. *Id.* ¶¶ 113-150.

In the second, Plaintiffs seek a declaratory judgment, requesting the following declarations or findings: (1) the *Cease* decision is valid (Count III); (2) offensive collateral estoppel bars HUD from re-litigating *Cease* here (Count IV); (3) the QHWRA does not require automatic denial of admission for applicants lawfully using medical marijuana (Count I); and (4) Plaintiffs should be afforded a reasonable accommodation to use medical marijuana while seeking Section 8 housing (Count V). As to each of these claims, Plaintiffs also seek an injunction prohibiting HUD from carrying out its threat of cutting off the Authority's funding for complying with *Cease.*

- 4 -

HUD now moves to dismiss the first amended complaint.  ECF 33.  After full briefing, the Court heard oral argument on the motion.  ECF 44.  The motion is ready for disposition.

## DISCUSSION & ANALYSIS[2]

### I. Plaintiffs fail to allege disparate treatment to state a plausible equal-protection claim.

Plaintiffs allege that HUD's policy of excluding medical-marijuana users from admission into Section 8 housing discriminates against low-income and disabled individuals, in violation of equal protection under the U.S. Constitution.  ECF 29, ¶¶ 142-47.  This argument fails to state a plausible claim because Plaintiffs cannot plead disparate treatment by HUD.

Equal protection "commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (cleaned up).  "Fifth Amendment equal protection claims are examined under the same principles that apply to such claims under the Fourteenth Amendment." *Abdul-Akbar v. McKelvie*, 239 F.3d 307, 317 (3d Cir. 2001).  Thus, plaintiffs bringing an equal protection claim under the Fifth Amendment must prove the existence of purposeful discrimination.  *Shuman ex rel. Shertzer v. Penn Manor Sch. Dist.*, 422 F.3d 141, 151 (3d Cir. 2005).  It isn't enough that a plaintiff experience different treatment of itself—the plaintiff "must show

---

[2] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  Any reasonable inferences should be considered in the light most favorable to the plaintiff.  *See Lula v. Network Appliance*, 255 F. App'x 610, 611 (3d Cir. 2007) (citing *Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989)).

intentional discrimination against him because of his membership in a particular class, not merely that he was treated unfairly as an individual." *Murray v. Pittsburgh Bd. of Pub. Educ.*, 919 F. Supp. 838, 847 (W.D. Pa. 1996) (Lancaster, J.) (cleaned up). While Plaintiffs need not prove their equal-protection claim at the pleading stage, they must sufficiently allege that they can prove some "set of facts in support of their equal protection claim that would entitle them to relief." *Kaehly v. City of Pittsburgh*, No. 96-832, 1997 WL 306883, at *3 (W.D. Pa. Mar. 3, 1997) (Bloch, J.).

Plaintiffs' two theories of equal protection fail, as they have not pled any type of disparate treatment based on being members of a protected class. To begin with, Plaintiffs frame their claim too broadly. They allege that HUD treats them worse due to their use of medical marijuana, as compared to treatment by other government agencies that allegedly treat other medical-marijuana users more favorably. ECF 29, ¶¶ 7, 10. But that isn't the relevant comparison. "The threshold question for any constitutional claim founded upon equal protection grounds is whether ***the challenged governmental action*** treats differently two otherwise similarly situated individuals." *Hunter by Brandt v. Regents of the Univ. of California*, 971 F. Supp. 1316, 1321 (C.D. Cal. 1997) (emphasis added), *aff'd sub nom. Hunter ex rel. Brandt v. Regents of Univ. of California*, 190 F.3d 1061 (9th Cir. 1999). In other words, the Court must look at whether HUD, as the government actor who is the defendant in this case, has taken action that treats otherwise similarly situated groups differently—not whether all government policies treat medical marijuana users the same.

In that regard, Plaintiffs can't make the required showing. Their claim for income discrimination alleges that HUD unlawfully penalizes low-income persons for using medical marijuana, while "more affluent" individuals "are not and cannot be penalized" for using medical marijuana. ECF 29, ¶ 143. This claim fails to assert

disparate treatment by HUD because, by Plaintiffs' own admission, "more affluent" individuals cannot even qualify for Section 8 housing based on their higher incomes. ECF 38 p. 16 ("Because QHWRA and Section 8 are only available to low-income individuals and families, HUD's policy draws a line in the sand between low-income and wealthier individuals."). If HUD does not provide Section 8 assistance to "more affluent" individuals, then by definition, HUD cannot treat those more affluent individuals more favorably than low-income individuals. *Id.* ("[W]ealthier individuals who can afford mortgages or rent without federal assistance can legally utilize that same medicine without consequence."); *cf. Reimers v. United States Citizenship & Immigr. Servs.*, No. 22-35248, 2023 WL 3773644, at *2 (9th Cir. June 2, 2023) (no disparate enforcement of Controlled Substances Act under naturalization statutes, where non-citizen plaintiff "contends that she is treated differently than *citizen* marijuana business owners, but [plaintiff] is not a citizen and, moreover, the naturalization statutes do not apply to citizens." (emphasis in original)), *cert. denied*, 144 S. Ct. 563, 217 L. Ed. 2d 300 (2024).

Plaintiffs' theory of disability discrimination fares no better. Plaintiffs contend that HUD "treats individuals with serious medical conditions that qualify them to use medical marijuana under the Pennsylvania MMJ Act differently than individuals not using medical marijuana under state law because individuals that are ineligible to use medical marijuana may be admitted to Section 8 housing programs while medical marijuana eligible applicants are not." ECF 29, ¶ 146. But that isn't discrimination based on disability, but on a preferred course of treatment. Plaintiffs admit as much. ECF 38, p. 16 (arguing HUD's policy denied Plaintiffs admission to

Section 8 housing "[s]olely because of their preferred medication to treat their disabilities").

"An equal protection analysis is called for . . . only if the challenged government action classifies or distinguishes between two or more distinct groups." *Murray*, 919 F. Supp. at 847. The first amended complaint here doesn't allege that HUD's policy of rejecting applicants based on their use of medical marijuana distinguishes between two classes of people who apply for Section 8 housing. Because Plaintiffs haven't alleged any facts that would entitle them to relief, Count II fails as a matter of law.[3]

## II.    Plaintiffs' remaining claims are premature because there is no final agency action, and the claims are not ripe.

Plaintiffs' remaining claims all essentially take aim at HUD's authority under the QHWRA. But these claims are all premature because there is no final agency action, and the claims are not ripe.

The inciting incident of this case, as alleged in the first amended complaint, is HUD's purported "threat" to withhold all federal funding from the Authority if the

---

[3] Even if Plaintiffs had pled disparate treatment, their claim would nonetheless fail under rational-basis review. Plaintiffs concede that rational-basis review is the standard here (ECF 38, pp. 17-18), and based on that standard, the Court can discern several rational bases for HUD to proscribe the use of marijuana. For example, the QHWRA recognizes that residents' illegal use of drugs "may interfere with the health, safety, or right to peaceful enjoyment of the premises by other residents[,]" reflecting a reasonable and rational concern about the presence of drugs in federally funded housing. 42 U.S.C. § 13661(b)(1)(B); 144 Cong. Rec. S11833-02, S11841 (1998) (statement of Sen. D'Amato) ("[QHWRA] improves tenant screening and eviction procedures against persons engaged in violent or drug-related crimes or behavior which disrupts the health, safety or right to peaceful enjoyment of the premises of other tenants or public housing employees."). In promulgating its rules under the QHWRA, HUD stated that "[c]rime prevention in federally assisted housing will be advanced by the authority to screen out those who engage in illegal drug use or other criminal activity." Screening and Eviction for Drug Abuse and Other Criminal Activity, 66 Fed. Reg. 28776-01, 28766 (May 24, 2001). "[T]he protection of tenants is a legitimate state interest[,]" and rules and regulations intended to reduce safety risks to tenants in public housing will "readily pass[] muster under the forgiving rational basis test." *NYC C.L.A.S.H., Inc. v. Fudge*, 47 F.4th 757, 768 (D.C. Cir. 2022)

Authority complies with the directive set forth in *Cease*.   ECF 29, ¶¶ 15-16.   But this threat is not sufficient to obtain judicial review.   Two related concepts guide the Court's conclusion: the need for final agency action and the ripeness of this suit for judicial determination.   *Solar Turbines Inc. v. Seif*, 879 F.2d 1073, 1080 (3d Cir. 1989) (Supreme Court's test outlined in *FTC v. Standard Oil Co.*, 449 U.S. 232 (1980), "incorporated the ripeness standard into the standard for determining whether agency action is final.").[4]

The APA authorizes courts to review agency action only if the action is "final." *C & S Mfg., Inc. v. Napolitano*, No. 09-653, 2010 WL 571797, at *4 (E.D. Pa. Feb. 18, 2010).   "For agency action to be 'final,' the action must mark the 'consummation' of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature."   *Id.* (cleaned up).

The Third Circuit has articulated five questions for courts to consider in assessing finality: (1) Does the agency action represent the definitive position of the agency?   (2) Does the agency pronouncement have the status of law, so that

---

(holding rule banning smoking in public housing withstands rational-basis review), *cert. denied*, 143 S. Ct. 1045 (2023).   While Plaintiffs might disagree with these rationales, these are conceivable rational bases that the Court cannot rule out, and so save application of the statute here.   *New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 301 (3d Cir. 2007) (to withstand rational-basis review, "plaintiff bears the burden of negating all conceivable rational justifications for the allegedly discriminatory action or statute[.]").

[4] Though Plaintiffs have styled their claims as seeking declaratory and injunctive relief outside the APA, their claims are truly under the APA, as they effectively seek relief under that statute as parties "suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute[.]"  5 U.S.C. § 702; *Merlin Dev. Co. v. Fed. Home Loan Bank Bd.*, No. 85-2242, 1985 WL 4001, at *1 (E.D. Pa. Nov. 25, 1985) (construing claim for mandamus relief under 28 U.S.C. § 1361 as a claim under the APA where plaintiff sought "a mandatory injunction compelling agency action.").   Thus, the Court disregards the labels placed on the claims and finds that Plaintiffs' claims here are being brought pursuant to the APA.

immediate compliance is expected?  (3) Does the agency action have immediate impact on the daily operations of the plaintiff?  (4) Is the dispute over a pure question of law, without the need for factual development?   (5) Will a pre-enforcement challenge speed enforcement of the relevant act?  *Seif*, 879 F.2d at 1080; *Not an LLC v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, No. 22-747, 2022 WL 2073340, at *6 (W.D. Pa. June 9, 2022) (Stickman, J.).

Applying these questions to HUD's threat to withhold funding from the Authority, the Court concludes that the threat doesn't bear the hallmarks of final agency action.

**Definitive position**.  There is no allegation that the threat represents the definitive position of HUD.  Rather, the first amended complaint suggests that the threat was an informal notice of a perceived future violation.  ECF 29, ¶ 92.  Indeed, counsel for Plaintiffs admitted at oral argument that the threat arose while the Authority was "in discussion with HUD" during the *Cease* proceedings.  ECF 46, 46:11-17 ("call it a threat, call it advisement").  The nature of the threat as an informal notice rather than formal action reflects the process for addressing non-compliance with HUD's regulations, as explained by counsel for HUD at oral argument:

> So the way that HUD typically proceeds is if the housing authority has some sort of issue, HUD will approach the housing authority informally and inform them of, you know, this is what we think happened, this is why it violates the law, please fix it, and they will proceed informally. And usually it gets resolved at that stage, but if it doesn't, then HUD will act formally by issuing a written notice.  And my understanding is there has been no written notice in this case of anything like that.

ECF 46, 5:17-25.  Formal proceedings only begin—and the Authority only stands to lose any of its funding—after HUD issues written notice.  *Id.* at 6:1-20, 50:9-12 (citing 24 C.F.R. § 907.5).

**Status of law**.  Since the threat amounted to mere informal advisement during "discussion[s]" with HUD, it does not have the status of law.  *Id.* at 46:11-17.

- 10 -

**Daily operations**. HUD's "action" of threatening to withhold funding doesn't alter the Authority's daily operations. As alleged, the Authority continues to operate as it did before HUD's threat, so operations haven't changed. ECF 29, ¶ 93. Plaintiffs conceded at oral argument that the "proper procedural way" to address and resolve HUD's threat would be to first act to comply with *Cease* and force HUD to institute formal agency action. ECF 46, 39:13-40:7, 46:22-24. This concession shows that HUD's threat has not affected the Authority's daily operations.

**Need for factual development**. HUD retains discretion about whether and to what extent it will withhold funding based on non-compliance with federal regulations. *Id.* at 50:13-14; 24 C.F.R. § 907.5. Neither the Authority nor HUD can really know what is at stake here until HUD reaches a final determination. ECF 46, 50:13-21 (counsel for HUD explaining that "HUD could take some or all or none" of the Authority's funding based on non-compliance but that "HUD has not reached any final determination about that" so "[w]e just don't know right now"). Further factual development is therefore necessary.

**Efficacy of pre-enforcement challenge**. A pre-enforcement challenge won't speed things up here because, as pled, the Authority continues to comply with HUD's rules and regulations. ECF 29, ¶ 93. The status quo remains fixed, and the Court's review won't change that.

HUD's informal threat is more like a cease-and-desist letter (if it even rises to that level), rather than a formal action. Such letters generally don't determine any rights or obligations and don't have direct legal consequences—instead they are "vehicles by which [an agency] can notify a party that it believes the requirements of [a given statutory or regulatory framework] are being violated." *Not an LLC*, 2022 WL 2073340, at *7 (cleaned up). That's exactly what we have here—notice of belief

in a violation, not final agency action.  That is not enough to bring a claim at this juncture.

Relatedly, Plaintiffs' claims also fail under the doctrine of ripeness.  "Ripeness is a justiciability doctrine designed to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties."  *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807-08 (2003) (cleaned up).  "In determining whether a case is ripe, we generally examine: (1) the fitness of the issues for judicial decision, and (2) the hardship to the parties of withholding court consideration."  *Khodara Env't, Inc. v. Blakey*, 376 F.3d 187, 196 (3d Cir. 2004) (cleaned up).  Claims are not ripe for review when they "rest upon contingent future events that may not occur as anticipated, or indeed may not occur at all[.]"  *Not an LLC*, 2022 WL 2073340, at *8 (cleaned up).

For the reasons explained above, the issues presented by the Authority's current predicament are not fit for judicial decision.  It isn't clear whether the Authority will face any negative enforcement action should it decide to alter course and comply with *Cease* instead of HUD's informal advisement.  Indeed, Plaintiffs acknowledged that the case is "done" if HUD concludes that no enforcement action is necessary.  ECF 46, 27:2-9.  So the Court isn't in a position to resolve the issues until two things happen: the Authority follows the state-court order in *Cease*, and HUD institutes formal action to withhold funding in response to the Authority's compliance with *Cease*.

The Court remains aware of the bind in which the Authority finds itself.  Under *Cease*, the Authority must "establish fair and reasonable standards for determining what circumstances admission to Section 8 housing is prohibited for an applicant who

is legally using medical marijuana under state law[.]" *Cease*, 247 A.3d at 65.  But under federal law, the Authority must "prohibit admission" to housing if it "determines that any household member is currently engaging in illegal use of a drug[,]" and currently, use of marijuana is always illegal under federal law given its status as a Schedule I controlled substance.  24 C.F.R. § 5.854; *see also* 42 U.S.C. § 13661(b)(1); 24 C.F.R. § 960.204(a)(2)(i); *Forest City Residential Mgmt., Inc. ex rel. Plymouth Square Ltd. Dividend Hous. Ass'n v. Beasley*, 71 F. Supp. 3d 715, 727 (E.D. Mich. 2014) ("[I]t is impossible for someone to ingest marijuana, 'medical' or otherwise, without violating the CSA.").

But for there to be a ripe controversy here, the Authority needs to force HUD's hand, by complying with the Commonwealth Court's decision in *Cease*, and then receiving some type of formal notice from HUD.  At this juncture, it is wholly uncertain whether such a notice will be issued or whether HUD will take any enforcement action given the current movement by the federal government to re-schedule marijuana—thus highlighting the lack of a ripe dispute.

\*     \*     \*

Therefore, after careful consideration, it is hereby **ORDERED** that Defendants' motion to dismiss (ECF 33) is **GRANTED**.  Plaintiffs' first amended complaint is **DISMISSED**.  Count II is **DISMISSED WITH PREJUDICE**, while the remaining Counts are **DISMISSED WITHOUT PREJUDICE** and subject to re-filing upon a more concrete and final action by HUD.  The Clerk of Court shall mark this case as **CLOSED,** subject to Plaintiffs filing a motion to re-open upon a showing of a final agency action.

Date: June 17, 2024

BY THE COURT:

/s/ J. Nicholas Ranjan
United States District Judge

- 13 -